## **FINAL ORDER - DOE DEFAULT "NO APPEARANCE" & INQUEST - PARENT SUBMISSIONS - PENDENCY & MOOTNESS**

Case Number:              189799

NYS Identifier Number     N/A

Student's Name:           █████████████████████

Date of Birth:            ████████████

District:                 02

Hearing Requested By:     Parent

Dates(s) of Hearing:      09/10/20

Actual Record Close Date: 11/27/20

Hearing Officer:          Edgar De Leon

**Case No.  189799**

---

<u>NAMES AND TITLES OF PERSONS WHO APPEARED</u>

| <u>Name</u> | <u>Title</u> | <u>For</u> | <u>Date</u> |
|---|---|---|---|
| "No Appearance" | N/A | DOE | 09/10/20 |
| | | | |
| [CONFIDENTIAL] | Attorney | PARENT | 09/10/20 (T) |
| [CONFIDENTIAL] | Mother | PARENT | 09/10/20 (T) |

**Case No.  189799**

DOCUMENTATION ENTERED INTO RECORD

| Number/Letter | Title | Dated | For | # of Pages |
|---|---|---|---|---|
| N/A | N/A | N/A | DOE | N/A |
| N/A | N/A | N/A | PARENT | N/A |
| N/A | N/A | N/A | IHO | N/A |

**Case No.  189799**

On October 8, 2019, I was appointed the Impartial Hearing Officer ("IHO") to conduct an impartial hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USC § 1415(f)(3), Article 89 of the New York State Education Law, Part 200 of the Regulations of the New York State Commissioner of Education and Section 504 of the Rehabilitation Act of 1973, concerning a dispute between the Parent of an ███ ███ student attending a private school and the New York City - Department of Education ("DOE") - District: 02, regarding the student's special education program.  I was appointed after the recusal of at least one other IHO.  After having adjournments granted at the request of and with the consent of the parties, or for good cause, the impartial hearing was held on September 10, 2020.  The DOE did not appear at the hearing.  (T-4-5)  A list of the persons who appeared via affidavits and the documents entered into evidence is annexed hereto.

## **BACKGROUND**

This case was initiated as the result of a written Due Process Complaint ("DPC") filed by the student's Parent's attorney(s), [CONFIDENTIAL] on or about September 27, 2019, and carried under New York City ("NYC") Case No. 189799.  The Parent herein alleges that the student was denied a "free and appropriate public education" ("FAPE") for the 2019-2020 school year.  At the impartial hearing, the Parent request the following relief:

(a)     Payment by the NYC-DOE directly to the private school for the cost of Full Tuition for the 2019-2020 extended school year; and

(b)     Transportation Costs including a 1:1 travel nurse; and

(c)      Reconvene an Annual Review meeting for student.

At the hearing, the Parent stated that her pendency application is based upon an "operative placement" argument that the program and services that were in effect at the time of the DPC becomes the baseline for the student's pendency during the adjudication of the DPC, which is at the private school sometime in July, rather than September of 2019.  (T-9)  Additionally, the Parent argues that the pendency placement offered by the DOE, which the Parent contend there was none, but even assuming arguendo that DOE would contend that it is IEP that was offered for the student for the 2019-2020 school year serves as a pendency placement offer, that placement was not available and it was not available as a result of the closure of the previous private school sometime in the middle of March of 2020.  (T-10)

The Parent stated that the student was recommended for a 12-month school year, he did not start until after the summer session.  (T-10-1)

## FINAL ORDER - DOE'S DEFAULT - FAILURE TO APPEAR

The Parents' DPC having been duly filed pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USC § 1415(f)(3), Article 89 of the New York State Education Law, Part 200 of the Regulations of the New York State Commissioner of Education and Section 504 of the Rehabilitation Act of 1973; and

Notice having been duly given to the DOE; and

The matter having come on for an "impartial hearing" before this IHO on September 10, 2020, and which time the DOE did not appear at the hearing (T-4-5) and the Parent agreed to have this decision/order made on submission of oral arguments and testamentary and documentary evidence; and

The Parent having appeared with her attorney(s), [CONFIDENTIAL], attorney [CONFIDENTIAL] assigned and not having provided testimony via affidavit pursuant to 8 NYCRR 200.5[j][3][xii][f], but the DOE having defaulted by failing to appear at the hearing (Id.); and

The an inquest regarding the Parent's alleged damages and the relief she seeks, and this "Final Order" consented to by the Parent based upon the DOE's default and her arguments for an "Order on Pendency", having been presented to this IHO on the record as being in the best interest of the Parent; and

### <u>DOE'S DEFAULT FOR FAILURE TO APPEAR AT THE HEARING</u>

Whereas under the IDEA, the burden of persuasion in an administrative hearing is placed upon the party seeking relief.  (See <u>Schaffer v. Weast</u>, 546 U.S. at 59-62)  On August 15, 2007, the New York State Legislature amended the Education Law to place the burden of proof upon the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement would continue to have the burden of proof regarding the appropriateness of such placement.  (See Educ. Law § 4404[1][c], as amended by Ch. 583 of the Laws of 2007)  The amended statute took effect for impartial hearings commenced on or after October 14, 2007.  (SRO No. 08-016); and

Whereas the DOE having failed to appear and submit any testamentary or documentary evidence to meet it burden under the law (T-4-5); and

Whereas the DOE failed to appear for the impartial hearing as scheduled, failed to file and serve an answer, or serve a "Prior Written Notice" in this case.  (See 20 U.S.C. 1415(f)(3)(e) and T-4-5); and

Whereas "Prior Written Notice" meaning written statements developed in accordance with Section 200.5(a) of the Regulations of the Commissioner of Education, and provided to the parents of a student with a disability a reasonable time before the school district proposes to or refuses to initiate or change the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education to the student; and

Whereas silence in a responsive pleading is an admission, or that a counterclaim in federal practice is compulsory in the answer or deemed waived.  (See New York Practice, 4th Edition §§223 & 224, citing Federal Rules of Civil Procedure, Rule 13(a) & Cummings v. Dresher, 18 N.Y.2d 105, 108, 271 N.Y.S.2d 976, 218 N.E.2d 688, 690 (1966) and additionally, as a general matter, the parties to an impartial hearing are obligated to comply with the reasonable directives of the Impartial Hearing Officer ("IHO") regarding the conduct of the impartial hearing.  (SRO No. 05-026, 04-103 and 04-061); and

Whereas an IHO may require the parties to be present at the impartial hearing.  (8 NYCRR 200.5(j)(3)(xiii) and an IHO's order to the Parent (here the DOE) to attend the impartial hearing in order to be questioned is a reasonable directive that obligates the agency to comply.  (SRO No. 09-073); and

Whereas the parties' appearance is integral to the administration of an impartial hearing and at an impartial hearing, the IHO is authorized to administer oaths and to issue subpoenas in connection with the administrative proceeding (8 NYCRR 200.5[j][3][iv]) and the IHO may ask questions of attorneys or witnesses for the purposes of clarification or completeness of the hearing record.  (8 NYCRR 200.5[j][3][vii]); and

Whereas the Parents, school authorities, and their respective attorneys or representatives, have an opportunity to present evidence, compel the attendance of witnesses, and to confront and question all witnesses at the impartial hearing.  (8 NYCRR 200.5[j][3][xii]) and the IHO may take direct testimony by affidavit in lieu of in-hearing testimony, provided that the witness giving such testimony shall be made available for cross-examination (8 NYCRR 200.5[j][3][xii][f]) and none of these processes can occur without the participation of the parties; and

Whereas an IHO's dismissal of a DPC with prejudice, or here the DOE's default for its failure to appear at the hearing, based on the failure of the party to prosecute or appear at the hearing and comply with reasonable directives issued during the proceeding, has been held appropriate under the circumstances of the case.  (SRO No. 04-061); and

Whereas the party who defaults in concedes only liability and not the amount of "damages."  (See CPLR § 3215, First Nat. Bank & Trust Co. v. Classic Collateral Corp., 44 A.D.2d 868, 355 N.Y.S.2d 504 (1974), James v. Powell, 19 N.Y.2d 249, 279 N.Y.S.2d 10, 225 N.E.2d 741 (1967), McClelland v. Climax Hosiery Mills, 252 N.Y. 347, 169 N.E. 605 (1930)  The DOE's default constitutes an admission of liability, but not of damages, which remains the Parent's burden to prove.  (See Fed. R. Civ. P. 55 & City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114 at 128 [2d Cir. 2011]); and

Whereas under New York law, a party's failure to show up at the scheduled time for trial may entitle the opposing party to a default judgment.  (CPLR § 3215(a); and

Whereas here, the DOE did not appear at the hearing or proffer any evidence that it has offered the student a FAPE, this amounting to a tacit concession that the agency did not offer the student a FAPE; and

Whereas although it would be fundamentally unfair to allow either party to rely solely on the submission of documents in meeting its burden under law, where those documents are rife with double, triple and even unidentified hearsay sources, that cannot be cross examined; and

Whereas while compliance with technical rules of evidence is not required in administrative hearings, under certain circumstances, the receipt of hearsay evidence may be so prejudicial as to have a tendency to deprive a party of fair hearing.  (See Strain v. Sarafan, 57 A.D.2d 525, 393 N.Y.S.2d 572, N.Y.A.D. (1977), *where the hearsay testimony was of vital importance and should have been subjected to cross-examination by the petitioner…the petitioner was deprived of a meaningful hearing*, Dukes v. New York City Housing Authority, 63 A.D.2d 690, 404 N.Y.S.2d 889, N.Y.A.D. (1978), *holding that the excessive reliance on hearsay evidence effectively denied petitioner the right to cross-examine adverse witnesses*, Claim of Evans, 254 A.D.2d 564, 678 N.Y.S.2d 696, N.Y.A.D. (3 Dept. 1998), (*where in an unemployment compensation proceedings, administrative law judge ('ALJ") properly exercised discretion to exclude hearsay evidence to protect employer's fundamental right of cross-examination, where claimant proffered written hearsay statement, authored by acquaintance of the employer's president, which allegedly indicated that claimant did not resign but was fired, but the acquaintance failed to answer subpoena directing him to testify at hearing, thereby denying employer the opportunity to cross-examine him on the statement*, and Alvarado

v. State of New York, 110 A.D.2d 583, 488 N.Y.S.2d 177 (1st Dept. 1985), *holding that a license suspension hearing against a boxer and his managers was faulty because of a lack of an opportunity "to cross-examine certain witnesses whose reports were introduced into evidence without their testifying, in violation of SAPA Section 306, subd. (3)." (Id. at 585, 488 N.Y.S.2d at 179*); and

Whereas here the DOE did not appear at the hearing, did not present a case-in-chief and made no substantive effort to controvert the testamentary and documentary evidence submitted by the Parent and the credibility of the testamentary and documentary evidence was not rebutted by the agency and the documentary evidence is clearly relevant and material to the issues to be determined; and

Whereas I find the Parent's application for pendency submitted in this case to be credible, completely uncontroverted and conclusive in this case; and

Whereas as noted above, the DOE's failure to present a case at the hearing is a concession that it denied the student a FAPE and that the Parent is entitled to the relief she seeks and this leaves, as the primary issue to be resolved through impartial hearing, what relief and/or compensatory education remedy, if any, is available and appropriate to remediate the denial of a FAPE.  (SRO No. 17-033); and

Whereas it is noted that the DOE was required under the due process procedures set forth in New York State law, to address its burdens in the due process hearing context by describing its views, based on a fact-specific inquiry set forth in an evidentiary record, regarding an appropriate relief and/or compensatory education remedy that most reasonably and efficiently could place the student in the position that he would have been but for the denial of a FAPE.  (See Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 457 [2d

Cir. 2015], cert. denied, 136 S. Ct. 2022 [2016], quoting Reid v. Dist. of Columbia, 401 F.3d 516, 524 [D.C. Cir. 2005] [*noting that the "'ultimate award [of compensatory education] must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place*'"]); and

Whereas when, as here, the DOE does not appear and present any case at the hearing, the hearing process essentially becomes an "inquest" as to the appropriate relief; and

Whereas the DOE has conceded liability by failing to present a case and meet its burden under the law because New York State law has placed the burden of production and persuasion at an impartial hearing on the school district, unlike states which align the burden of production and persuasion consistent with Schaffer v. Weast, 546 U.S. 49, 58-62 [2005]; and

Whereas it is not an IHO's responsibility to craft the DOE's position regarding the primary issue in the case, for the denial of FAPE and the undersigned finds that the DOE failed to adhere to the requirements of the law, has denied the student in this case a FAPE and that the Parent is entitled to the relief she has requested; and

**PARENT'S REQUEST FOR RELIEF**

Whereas when turning to the question of whether the DOE should be required to reimburse and/or pay for the private educational services and relief requested for the student, because the services offered by the DOE were inadequate or inappropriate, and the relief sought and services selected by the Parents are appropriate and equitable considerations support the Parent's claim (Burlington, Florence and Cerra, Supra), the

Parent need only demonstrate that the requested services are specially designed to meet the unique needs of the student, supported by such services as are necessary to permit her to benefit from the instruction.  (See Gagliardo, 489 F.3d at 112; see Frank G., 459 F.3d at 364-65); and

Whereas a private school placement must be "proper under the Act."  (See Carter, 510 U.S. at 12, 15 and Burlington, 471 U.S. at 370), i.e., the private school offered an educational program which met the student's special education needs.  (See Gagliardo, 489 F.3d at 112, 115; Walczak, 142 F.3d at 129 and Matrejek, 471 F. Supp. 2d at 419); and

Whereas a Parent's failure to select a program approved by the State in favor of an unapproved option is not itself a bar to reimbursement.  (See Carter, 510 U.S. at 14); and

Whereas the private school need not employ certified special education teachers or have its own IEP for the student.  (See Carter, 510 U.S. 7; SRO No. 08-085; 08-025; 08-016; 07-097; 07-038; 02-014 and 01-105); and

Whereas the Parents also need not show that the placement provides every special service necessary to maximize the student's potential.  (See Frank G., 459 F.3d at 364-65) and when determining whether the parents' unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether that placement is "reasonably calculated to enable the child to receive educational benefits."  (See Frank G., 459 F.3d at 364; see Gagliardo, 489 F.3d at 115 [citing Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 [6th Cir. 2003] [stating "evidence of academic progress at a private school does

not itself establish that the private placement offers adequate and appropriate education under the IDEA"]]); and

Whereas there is no request for compensatory educational services in this case, but as stated below, the DOE's failure to address, its delay and/or its failure to implement "pendency" justifies an award of compensatory services, and an IHO cannot determine the amount of compensatory education that a student requires unless the record provides him with sufficient "insight about the precise types of education services the student needs to progress." (Mary McLeod Bethune Day Acad. Pub. Charter Sch., 555 F. Supp. 2d 130, 50 IDELR 134 [D.D.C. 2008] citing Branham v. District of Columbia, 427 F.3d 7, 44 IDELR 149 [D.C. Cir. 2005]); and

Whereas pertinent findings to enable an IHO to tailor the ultimate award to the student's unique needs should include the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services requested, and the student's current educational abilities. (See Branham v. District of Columbia, 427 F.3d 7, 44 IDELR 149 [D.C. Cir. 2005], see also Mary McLeod Bethune Day Acad. Pub. Charter Sch., 555 F. Supp. 2d 130, 50 IDELR 134 [D.D.C. 2008]); and

Whereas the Parent has the burden of "propos[ing] a well-articulated plan that reflects the student's current education abilities and needs and is supported by the record." (See Phillips v. District of Columbia, 2010 WL 3563068, at *6, 55 IDELR 101 [D.D.C. Sept. 13, 2010] quoting Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt ("Nesbitt II"), 583 F. Supp. 2d 169, 172, 51 IDELR 125 [D.D.C. 2008]); and

Whereas the record in this case is completely uncontroverted by the DOE and supports a finding that the Parent is entitled to the relief sought as indicated below (supra)

and it is unfortunate that the agency forced the Parent in this case to bring the matter to a hearing, when it offered no evidence that it provided the student with a FAPE and then did not appear at the hearing and challenge the Parents' assertion regarding the appropriateness of the relief sought; and

Whereas the DOE did not initiate this impartial hearing (DPC); and

Whereas to demonstrate the appropriateness of the relief sought, the Parent need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of the student, supported by such services as are necessary to permit the student to benefit from instruction.  (See Gagliardo, 489 F.3d at 112; see Frank G., 459 F.3d at 364-65); and

Whereas in the absence of evidence demonstrating that the Parent has failed to cooperate in the development of the IEP or otherwise engaged in conduct that precluded the development of an appropriate IEP, or failed to give proper notice, equitable considerations generally support a claim of the relief sought by the Parent, including but not limited to tuition reimbursement.  (SRO No. 04-049); and

Whereas there being nothing in the record consisting solely of the Parent's uncontroverted application for an "Order on Pendency" that sustains a finding that the Parents have not cooperated with the CSE; and

Whereas the DOE having failed to appear waived its right to contest the Parent's application for pendency and/or to cross examine the Parent by failing to appear at the hearing (T-4-5); and

Whereas the Parent's application for an "Order on Pendency" is completely and unequivocally uncontroverted and need not be repeated herein in their entirety as they are annexed hereto for the benefit of the reader; and

## ORDER ON PENDENCY ON DEFAULT

Whereas the DOE has failed to appear at the hearing and defaulted on its statutory obligations regarding "pendency" and a hearing "on the merits"; and

Whereas the IDEA and the New York State Education Law require that a student remain in his or her then current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student.  (See 20 U.S.C. § 1415[j]; Educ. Law §§ 4404[4], 4410[7][c]; 34 C.F.R. § 300.518[a]; 8 NYCRR 200.5[m]; see also Student X. v. New York City Dep't of Educ., 2008 U.S. Dist. LEXIS 88163, 108 LRP 62802 (E.D.N.Y. Oct. 30, 2008); SRO No. 08-061, 08-050, 08-009, 08-003, 08-001, 07-095 and 07-062); and

Whereas "pendency" has the effect of an automatic injunction, and the party requesting it need not meet the requirements for injunctive relief such as irreparable harm, likelihood of success on the merits, and a balancing of the hardships.  (See Zvi D. v. Ambach, 694 F.2d 904, 906 [2d Cir. 1982]; Wagner v. Bd. of Educ., 335 F.3d 297, 301 [4th Cir. 2003] and Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 [3d Cir. 1996]); and

Whereas the purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability and "strip schools of the unilateral authority they had traditionally employed to exclude disabled students . . . from school." (See Honig v. Doe, 484 U.S. 305, 323 [1987]; Evans v. Bd. of Educ., 921 F.

Supp. 1184, 1187 [S.D.N.Y.1996], citing Bd. of Educ. v. Ambach, 612 F. Supp. 230, 233 [E.D.N.Y. 1985]); and

Whereas the pendency provision does not mean that a student must remain in a particular site or location.  (See Concerned Parents and Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ., 629 F.2d 751 [2d Cir. 1980]; SRO No. 07-125, 07-076, 05-006 and 99-90), or at a particular grade level.  (See SRO No. 03-032 and 95-16); and

Whereas under the IDEA, the pendency inquiry focuses on identifying the student's then current educational placement.  (See Mackey v. Bd. of Educ., 386 F.3d 158, 163 [2d Cir. 2004], citing Zvi D., 694 F.2d at 906); and

Whereas although not defined by statute, the phrase "then current placement" has been found to mean the last agreed upon placement at the moment when the due process proceeding is commenced.  (See Murphy v. Bd. of Educ., 86 F. Supp. 2d 354, 359 [S.D.N.Y. 2000] aff'd, 297 F.3d 195 [2002]; SRO No. 01-013 and 00-073); and

Whereas the U.S. Department of Education has opined that a student's then current placement would "generally be taken to mean current special education and related services provided in accordance with a child's most recent [IEP]."  (See Letter to Baugh, 211 IDELR 481 [OSEP 1987] and Susquenita Sch. Dist. v. Raelee, 96 F.3d 78, 83 [3d Cir. 1996]); and

Whereas, however, if there is an agreement between the parties on placement during the proceedings, it need not be reduced to a new IEP, and it can supersede the prior unchallenged IEP as the then current placement.  (See Evans, 921 F. Supp. at 1189

n.3; Bd. of Educ. v. Schutz, 137 F. Supp. 2d 83 [N.D.N.Y. 2001] aff'd, 290 F.3d 476, 484 [2d Cir. 2002], see also Letter to Hampden, 49 IDELR 197[OSEP 2007]); and

Whereas a prior unappealed impartial hearing officer's decision may establish a student's current educational placement for purposes of pendency.  (See Student X., 2008 U.S. Dist. LEXIS 88163, 108 LRP 62802; Letter to Hampden, 49 IDELR 197 [OSEP 2007]; SRO No. 08-050, 08-009, 07-140 and 07-134); and

Whereas the Second Circuit has proffered three possible definitions of "then current educational placement":  (1) the placement described in the student's most recently implemented IEP; (2) the operative placement actually functioning at the time when the pendency provision of the IDEA was invoked; and (3) the placement at the time of the previously implemented IEP.  (See Mackey, 386 F.3d at 163, citing Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 [6th Cir. 1990] [emphasis added], see also SRO No. 05-006); and

Whereas the purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability.  (See Honig, 484 U.S. 305); and

Whereas the provision "protect[s] the educational status quo of the student while the parents and the school fight out the legalities of the placement and the provision is student focused, not school district or parent focused."  (See Cosgrove v. Bd. of Educ., 175 F. Supp. 2d 375, 391 [N.D.N.Y. 2001]); and

Whereas the preservation of the status quo guarantees that the student remains in the last placement that the parent and the district agreed to be appropriate.  (See Verhoeven v. Brunswick Sch. Comm., 207 F.3d 1, 10 [1st Cir. 1999] and Sanford Sch.

Comm. v. Mr. and Mrs. L, 2001 WL 103544, at *9 [D. Me. Feb. 1, 2001]), see also
Verhoeven, 207 F.3d at1, 9-11 [*noting the policy behind the IDEA's pendency provision
supports an interpretation of "current educational placement" that excludes temporary
placements*], Leonard v. McKenzie, 869 F.2d 1558, 1564 [D.C. Cir. 1989] [*finding that the
student's private school placement, originally contemplated to last only one year, did not
constitute his "current educational placement" for pendency purposes once that year
ended*], SRO No. 07-095 and 07-062); and

Whereas if neither of the parties appeals the impartial hearing officer's interim
decision, that interim decision becomes final and binding on the parties.  (See 34 C.F.R.
§ 300.514; 8 NYCRR 200.5[k]; SRO No. 08-073, 08-025, 08-013, 07-050, 07-026, 06-
092, 06-085, 04-024, 03-108 and 02-100); and

Whereas an impartial hearing officer must confine his analysis to the evidence
contained in the hearing record and must cite to relevant facts in the hearing record.  (See
8 NYCRR 200.5[j][5][v] and SRO No. 08-064, 08-043, 08-037, 08-028, 07-031 and 07-
090); and

## UNILATERAL PLACEMENTS

Whereas on May 18, 2020, the United States Court of Appeal for the 2nd Circuit, in
Case Nos.: No. 19-1662-cv and 19-1813-cv, in deciding whether Parents who unilaterally
enroll their child in a new private school and challenge the adequacy of the child's IEP
are entitled to public funding for the new school during the pendency of the IEP dispute,
on the basis that the educational program being offered at the new school is substantially
similar to the program that was last agreed upon by the Parents and the school district
and was offered at the previous school, on a *de novo* review, held that such Parents are

not entitled to public funding because it is the school district, not the Parents, who has the authority to decide how a child's last agreed-upon educational program is to be provided at public expense during the pendency of the child's IEP dispute; and

Whereas the Court stated that the IDEA does not require the City to fund such a unilateral placement during the pendency of their IEP dispute and that Parents unilaterally place their children the Parents do so at their own financial risk; and

Whereas the Court reaffirmed that the IDEA does not authorize a school district to recoup payments made for educational services pursuant to the stay put provision; and

Whereas the Court further stated that "then-current educational placement" in the stay-put provision typically refers to the child's last agreed-upon educational program before the Parent requested a due process hearing to challenge the child's IEP, and that under the IDEA, an initial placement is made by the school district upon the consent of the Parent, but a child's educational placement (or program) may be changed if, for example, the school district and the Parents agree on what the new placement should be, or if an IHO or SRO finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the Parents' favor, and the school district chooses not to appeal the decision; and

Whereas implicit in the concept of "educational placement" in the stay-put provision (i.e., a pendency placement) is the idea that the Parents and the school district must agree either expressly or as impliedly by law to a child's educational program; and

Whereas the Court further stated that the stay-put provision does not guarantee a child with a disability "the right to remain in the exact same school with the exact same service providers while his administrative and judicial proceedings are pending. Instead,

it guarantees only the same general level and type of services that the . . . child was receiving."; and

Whereas it is the City, not the Parents, that is authorized to decide how (and where) the students' pendency services are to be provided; and

Whereas the school district has a preexisting and independent authority to determine how to provide the most-recently-agreed-upon educational program. "[i]t is up to the school district," not the Parent, "to decide how to provide that educational program [until the IEP dispute is resolved], so long as the decision is made in good faith." (Citing T.M., 752 F.3d at 171 (*citing Concerned Parents, 629 F.2d at 756*); and

Whereas the Court goes on to state that if a Parent disagrees with a school district's decision on how to provide a child's educational program, the Parent has at least three options under the IDEA: (1) The Parent can argue that the school district's decision unilaterally modifies the student's pendency placement and the parent could invoke the stay-put provision to prevent the school district from doing so; (2) The Parent can determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis; or (3) The Parent can determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the IEP dispute is resolved; and

Whereas what the Parent cannot do is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis; and

Whereas to hold otherwise would turn the stay-put provision on its head, by effectively eliminating the school district's authority to determine how pendency services should be provided; and

Whereas, however, the Court specifically did not consider, much less resolve, any question presented where the school providing the child's pendency services is no longer available and the school district either refuses or fails to provide pendency services to the child; and

Whereas, nevertheless, the Court noted that it makes sense that it is the party generally responsible for paying a student's agreed-upon educational program - here, the City - who determines how the pendency services are to be provided, for two reasons: (i) public funding for pendency services can never be recouped; and (ii) the cost of educational services in schools can vary dramatically; and

Whereas where the basis for "pendency" is stated to be the student's "operative placement" at the time when the IEP proceedings were initiated, the Court held that argument fails for all of the reasons stated above; and

Whereas a Parent cannot unilaterally transfer his or her child and subsequently initiate an IEP dispute to argue that the new school's services must be funded on a pendency basis because that argument effectively renders the stay-put provision meaningless by denying any interest of a school district in resolving how the student's agreed-upon educational program must be provided and funded; and

Whereas the Court further noted that it bears recalling that the term "operative placement" has its origin in cases where the school district attempts to move the child to a new school without the Parents' consent, or where there is no previously implemented

IEP so that the current placement provided by the school district is considered to be the pendency placement for purposes of the stay-put provision; and

Whereas in the case at bar, the student was previously attending a private school and was not "unilaterally" placed in his current private school for the 2019-2020 school year; and

Whereas the issue of whether the student's private services are ultimately appropriate or inappropriate for the student, is not one that I find the law as cited above, requires be determined for the purposes of "pendency" because if it is ultimately found to be inappropriate, the fault lies with the Parent who placed the student at his private school and/or services, and not the DOE; and

Whereas it is unquestionable that the student's application for pendency at his current private services is uncontroverted and found to constitute his "operative placement" at the time that the Parents in this case invoked their right to pendency in the DPC (supra); and

Whereas it is uncontroverted that the student received the placement and services sought at another private school during the 2018-2019 school year, and as such I find that the student's current private school and services thereat are "substantially similar" to the student's previous private services and that the Parent is entitled to an "order on Pendency" recognizing the student's current private school and services thereat as the student's "pendency" placement in this case; and

**COMPENSATORY SERVICES FOR DOE'S FAILURE TO IMPLEMENT "PENDENCY"**

Whereas this "Order on Pendency" is retroactive from the date the Parents filed their DPC, September 27, 2019, throughout almost the entirety of the 10-month 2019-2020 school year that ended on June 26, 2020; and

Whereas the Second Circuit has repeatedly emphasized that a child is entitled to compensatory education when the district fails to implement pendency.  (See Toth v. N.Y.C. Dep't. of Educ., 720 Fed. Appx. at *51 (2d Cir. 2018); see also Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 456 (2d Cir. 2015) (*reversing district court award that would "undermine the [IDEA's] stay-put provision by giving the [school district] an incentive to ignore the stay-put obligation."*), cert. denied, 136 S. Ct. 2022 (2016); Dervishi v. Stamford Bd. of Educ., 653 Fed. Appx. 55, 2016 WL 3548246, at *2 (2d Cir. June 27, 2016)(summary order)(*same; remanding to district court to award missed services under pendency*); Student X. v. N.Y.C. Dep't. of Educ., 2008 WL 4890440, at *23–26; Burr v. Ambach, 863 F.2d at 1078 (2d Cir.1988) (*awarding compensatory relief for delays in hearing process*), vacated sub nom. Sobol v. Burr, 492 U.S. 902 (1989), aff'd on recon. sub nom, Burr by Burr v. Sobol, 888 F.2d 258 (2d Cir. 1989); see SRO No. 18-135, at 15, 18 (*remanding to IHO to determine compensatory education for denial of FAPE and to calculate compensatory education for failure to implement pendency*); SRO 15-123, at 7–8 (*reversing and remanding; "The parent asserts that the IHO erred in dismissing the entirety of the parent's claims regarding the 2013-14 school year as moot. I agree… it is generally accepted that a claim for compensatory education or additional services presents a live controversy…"*); and

Whereas I find that the DOE's position in this case is totally without merit because the agency failed to hear at the scheduled hearing and defaulted on its statutory obligations regarding "pendency" and an "impartial hearing on the merits"; and

Whereas because of the DOE's unreasonable delay in delaying the implementation of pendency, I award the Parent the same services, in the same amounts as indicated below, as compensatory and/or makeup services, retroactive to the first day of the student's 12-month 2019-2020 school year; and

## FUTURE RIGHTS

Whereas for the reasons stated below, I further find that the "Order on Pendency" issued in this case, effectively renders the case on the merits moot and also find that any objection to a finding of "mootness" because a finding on the merits is necessary to establish the student's future rights, perhaps regarding "pendency", is without merit, because it is well established in the law that these cases are considered a "snapshot in time" limited to the school year at issue and the issues raised in the Parents' DPC.  (See SRO No. 03-011, citing Roland M. v. The Concord School Committee, 910 F.2d. 983 at 922 [1st Cir. 1990]); and

Whereas Mere speculation as to what may happen in the future is not a proper concern in this matter; and

## ENFORCEMENT

Whereas should there be an appeal of this decision or should the DOE refuse to make payments pursuant to this Order on Pendency, is a possibility that is not of the moment or germane to this proceeding because IHOs do not have enforcement powers; and

Whereas it is well settled that the enforcement of an IHO's order or an agreement between the parties can properly be sought by filing an administrative complaint with the State Education Department's Office of Vocational and Educational Services for Individuals with Disabilities (VESID) pursuant to applicable federal and state regulations, or in federal court under 42 U.S.C. § 1983.  (See 34 C.F.R. §§ 300.151-300.153, 8 NYCRR 200.5[l], A.T. v. New York State Educ. Dep't., 1998 WL 765371, at *7 (E.D.N.Y. 1998), Blazejewski v. Bd. of Educ., 560 F. Supp. 701 (W.D.N.Y. 1983), SRO Nos.:  06-130, 04-085 & 99-004), see also A.R. v. New York City Dep't of Educ., 407 F.3d 65, 78 n.13 (2nd Cir. 2005) (*noting that IHOs have no enforcement mechanism of their own*), SRO Nos.: 04-100 & 04-007 (*recognizing that enforcement of prior orders of an IHO and/or a SRO are not properly determined by a SRO*), SRO No.:  03-071 (*holding that petitioner's enforcement remedies include judicial enforcement pursuant to CPLR Article 78, an action in federal court, or VESID administrative complaint procedure*), SRO No.  01-086 (*holding that petitioner's enforcement request was not properly before a SRO; petitioner's remedy was to seek judicial enforcement of the IHO's tuition reimbursement award*), SRO No. 99-4, (*holding that respondent's remedy was to seek enforcement in state or federal court*, citing Blazejewski, 560 F. Supp. 701, A.T., 1998 WL 765371) and SRO Nos.:  06-044, 02-086, 04-006, 02-011 & 97-64); and

## MOOTNESS

Whereas the "Order on Pendency" and its accompanying award of compensatory services herein entitles the Parents to receive either reimbursement for and/ or direct payment of the student's private school tuition and services thereat, from the beginning of the student's 12-month 2019-2020 school year, to the date of this order, which covers

the entirety of the student's 12-month 2019-2020 school year at his current private school; and

Whereas it is noted that the Parent in this case will now receive under pendency all of the relief she sought at the impartial hearing, for the entirety of the student's 12-month 2019-2020 school year at issue and which has now expired.

Whereas this raises the question of whether the instant matter has been rendered moot by the passage of time; and

Whereas upon careful consideration of the evidence in the hearing record I find that regardless of the merits of a decision concerning whether the DOE offered the student a FAPE for the 2019-2020 school year, no further meaningful relief may be granted to the Parent because she will receive all of the modified relief sought pursuant to "pendency", and thus, the Parent's case has now been rendered moot; and

Whereas in addition, careful consideration of the District Court's decision rendered in V.S., 2011 WL 3273922, as discussed further below, does not compel a different result because the dispute between the parties must at all stages be "real and live," and not "academic," or it risks becoming moot.  (See Lillbask v. State of Conn. Dep't of Educ., 397 F.3d 77, 84-85 (2nd Cir. 2005), Patskin v. Bd. of Educ., 583 F. Supp. 2d 422, 428 (W.D.N.Y. 2008), J.N. v. Depew Union Free Sch. Dist., 2008 WL 4501940, at *3-*4 (W.D.N.Y. Sept. 30, 2008), see also, Chenier v. Richard W., 82 N.Y.2d 830, 832 (1993), Hearst Corp. v. Clyne, 50 N.Y.2d 707, 714 (1980) and SRO No. 07-139); and

Whereas in general, cases dealing with issues such as desired changes in IEPs, specific placements, and implementation disputes may become moot at the end of the

school year because no meaningful relief can be granted.  (See, e.g., SRO Nos. 06-044, 05-058, 04-027, 00-037, 00-016 & 96-37); and

Whereas administrative decisions rendered in cases concerning such issues arising out of school years that have since expired may no longer appropriately address the current needs of the student.  (See Daniel R.R. v. El Paso Indep. Sch. Dist., 874 F.2d 1036, 1040 (5th Cir. 1989) and SRO Nos. 07-139, 07-028, 06-070 & 04-007); and

Whereas an exception provides that a claim may not be moot despite the end of a school year for which the student's IEP was written, if the conduct complained of is "capable of repetition, yet evading review."  (See Honig v. Doe, 484 U.S. 305, 318-23 (1988), Lillbask, 397 F.3d at 84-85, Daniel R.R., 874 F.2d at 1040 and SRO No. 04-038); and

Whereas the exception applies only in limited situations (see City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983) and is severely circumscribed.  (See Knaust v. City of Kingston, 157 F.3d 86, 88 (2nd Cir. 1998)  First, it must be apparent that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." (See Murphy v. Hunt, 455 U.S. 478, 482 (1982) see Knaust, 157 F.3d at 88 and SRO No. 07-139)  Second, controversies are "capable of repetition" when there is a reasonable expectation that the same complaining party would be subjected to the same action again. (See Weinstein v. Bradford, 423 U.S. 147, 149 (1975), Hearst Corp., 50 N.Y.2d at 714-15 and SRO No. 07-139); and

Whereas to create a reasonable expectation of recurrence, repetition must be more than theoretically possible.  (See Murphy, 455 U.S. at 482, Russman v. Bd. Of Educ., 260 F.3d 114, 120 (2nd Cir. 2001) and SRO No. 07-139)

Whereas mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a reasonable expectation or demonstrated probability of recurrence.  (See Russman, 260 F.3d at 120 and SRO No. 07-139) "Mootness" may be raised at any stage of litigation.  (In re Kurtzman, 194 F.3d 54, 58 (2nd Cir. 1999) and SRO No. 07-139); and

Whereas in this case, there is no longer any live controversy relating to the parties' dispute for the 2019-2020 school year because even if a determination on the merits demonstrated that the DOE did not offer the student a FAPE for the 2019-2020 school year, in this instance, it would have no actual effect on the parties because the 12-month 2019-2020 school year expired on June 26, 2020, and the student remained entitled to his pendency placement and services funded by the DOE through the conclusion of the administrative due process; and

Whereas, accordingly, the Parent's claims for the 2019-2020 school year need not be further addressed here; and

Whereas numerous SRO decisions have affirmed that an IHO is not required to make a determination that is academic or will have no actual impact upon the parties. (See SRO Nos. 11-085, 09-077, 09-065, 08-104, 08-044, 07-077, 06-044, 04-006, 02-086, 02-011 & 97-64); and

Whereas concerning the District Court's decision in V.S. (2011 WL 3273922), the court in that case held that in SRO No. 10-041, the SRO correctly determined that the Parents' request for funding for the school year that was the subject of that appeal was no longer at issue where the student was educated at public expense at a private school chosen by the Parents for the duration of the school year pursuant to a pendency order,

(see V.S., 2011 WL 3273922, at *9), noting that a decision in favor of the district in that matter would not affect its obligation to pay the costs of the student's private school tuition, the Court nevertheless determined that the district sought redress regarding the collateral issue of the student's ongoing pendency placement for future proceedings and that had a decision been rendered by a SRO on the merits, it would have affected the student's placement (Id.); and

Whereas after careful consideration and for several reasons discussed below, I respectfully decline to adopt the reasoning as set forth in V.S.:

First, the sole reason that the District Court in V.S. held that SRO No. 10-041, was not moot was because the parties required resolution of the merits of their dispute to establish the student's pendency placement in future proceedings.  (See V.S., 2011 WL 3273922, at *10)  However, this rationale regarding future pendency may be read so broadly as to apply to virtually any and all IDEA proceedings involving the educational placement or services to be provided to a student, and other courts in New York have not adopted this broad approach.  (See Bd. of Educ. v. O'Shea, 353 F.Supp.2d 449, 457 (S.D.N.Y. 2005)(*determining the matter was moot and declining to resolve the merits of the parties' dispute when the pendency provision provided an independent basis for doing so*) see also Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195 (2nd Cir. 2002)(*ruling that the pendency provision formed a basis for awarding relief without addressing the merits of the parties' dispute*), Bd. of Educ. v. Schutz, 290 F.3d 476, 484 (2nd Cir. 2002)(*rejecting the district's argument that a dispute must be resolved on the merits rather than on the basis of the pendency provision*), Patskin, 583 F. Supp. 2d at 428-29 (*holding that the matter was moot where the school year at issue had passed,*

and stating that the relevant controversy was whether the IEP that the student was provided with was an appropriate placement and that there was no reasonable expectation that the student would be subjected to that particular IEP again), M.S. v. New York City Dep't of Educ., 734 F. Supp. 2d 271, 273, 278-80 (E.D.N.Y. Aug. 25, 2010)(dismissing the case as moot and noting that the parents were receiving full compensation for their private school expenditures and that the proceeding was brought to obtain legal fees), J.N., 2008 WL 4501940, at *3-*4 (upholding a SRO's determination that the case was moot), Bd. of Educ. v. Steven L., 89 F.3d 464, 468-69 (7th Cir 1996)(holding that it was not necessary to determine which party would prevail on the merits when the stay put provision controlled for the duration of the dispute and the proposed public school IEP was no longer applicable to the student), see also New York City Dep't of Educ. v. S.S., 2010 WL 983719 (S.D.N.Y. Mar. 17, 2010))  The Ninth Circuit has explicitly rejected this rationale, holding that the stay put provision cannot be relied upon as the basis for a live controversy when the issue of liability on the substantive issues has been rendered moot.  (See Marcus I. v. Dep't of Educ., 2011 WL 1979502, at *1 (9th Cir. May 23, 2011)(explaining that stay put provision 20 U.S.C. § 1415(j) is designed to allow a student to remain in an educational institution pending litigation, but does not guarantee a student the right to remain in any particular institution because the right to a stay put placement that stems from a given adjudicatory proceeding lapses once the proceeding has concluded).

Second, we must be concerned with adjudicating rights unnecessarily, particularly when it will not affect the claims that a party alleged at the outset of the due process proceeding and especially under a statutory scheme like the IDEA, which envisions that

Parents and Districts will continue to convene on at least an annual basis to review a student's current IEP or educational placement, share their concerns with one another, and cooperatively and affirmatively engage in efforts to develop a new appropriate plan designed to offer the student a FAPE in the public schools.  (See 20 U.S.C. § 1414[d][4][A], 34 C.F.R. § 300.324[b][1][i], see also Educ. Law § 4402[2] and 8 NYCRR 200.4[f])  This process usually works best when it is as free as possible from acrimonious relationships that often develop after continued litigation.

Third, the automatic nature of the pendency provision set forth in the IDEA (see Zvi D. v. Ambach, 694 F.2d 904, 906 (2nd Cir. 1982), Wagner v. Bd. of Educ., 335 F.3d 297, 301 (4th Cir. 2003), Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3rd Cir. 1996), and if necessary, the speed with which parties may obtain State-level pendency placement reviews on an interlocutory basis under New York's regulatory scheme (see 8 NYCRR 279.10[d]) strongly diminishes the need to establish future pendency placements for future school years.  Such determinations are better left until the proceedings under which the right arises are commenced and the issue of the student's pendency placement is actually in dispute.

Fourthly, the Court's comment that a decision on the merits in V.S. would be useful (2011 WL 3273922, at *10), raises a concern that the decision has the effect of removing the much needed discretion of administrative hearing officers to focus on both fairly and efficiently resolving disputes while retaining the discretion of how best to allocate their adjudicative resources to address ever growing dockets.

Lastly, the Second Circuit has proffered three possible definitions of "then current educational placement":  (1) the placement described in the student's most recently

implemented IEP; (2) the operative placement actually functioning at the time when the pendency provision of the IDEA was invoked; and (3) the placement at the time of the previously implemented IEP.  (See Mackey, 386 F.3d at 163, citing Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 [6th Cir. 1990] [emphasis added], see also SRO No. 05-006)  Thus, there is no barrier to an IHO deciding "pendency" in a future matter between the parties were a decision on the merits has not been rendered in a previous controversy between them; and

Whereas for the forgoing reasons, I decline to find that the Parents' claim for the 2019-2020 school year continues to be a live controversy because I find that the matter has been rendered moot by the passage of time and the exception to the mootness doctrine does not apply in this case because the matter is not readily capable of repetition and in such a case, if any, the case would not evade review; and

Whereas the Parents may elect to challenge the IEP developed for the 2020-2021 school year and seek tuition reimbursement or enhanced services for the student at his private school for the 2020-2021 school year in a subsequent due process proceeding, the issues presented in such a claim could be different as the services recommended for the 2019-2020 school year; and

Whereas each year the elements of a tuition reimbursement or enhanced services claim must be analyzed separately.  (See Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 67 (2nd Cir. 2000)(*examining the prongs of the Burlington/Carter test separately for each school year at issue*), Snyder v. Montgomery County Pub. Schs., 2009 WL 3246579, *9-*10 (D.Md. Sept. 29, 2009), Omidian v. Bd. of Educ., 2009 WL 904077, at *21-*26 (N.D.N.Y. Mar. 31 2009)(*analyzing each year of a multi-year tuition reimbursement claim*

*separately*), Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *16 (E.D.N.Y. Oct. 30, 2008) and SRO Nos. 09-071 & 09-055); and

Whereas, accordingly, the exception to the mootness doctrine does not apply here as I do not find this matter to be capable of repetition yet evading review.  (See Honig, 484 U.S. at 318-23, Lillbask, 397 F.3d at 84-85, Daniel R.R., 874 F.2d at 1040 and SRO 04-038); and

Whereas, additionally, the Mayor's new policy announced on June 24, 2014, was implemented September 1, 2014 and includes the following changes in New York City:

- **Expedite Decisions:**  Where settlement is appropriate, DOE will seek settlement within (15) days of receiving notice of parent intent to unilaterally place their child in a school.

- **Reduce Extended Legal Battles:**  The DOE will refrain from re-litigating settled or decided cases, unless there is a change in the IEP placement recommendation. The DOE will avoid unnecessary litigation in cases where the agency is unable to offer a placement, or when a child is about to enter the final grade of a school.

- **Reduce Paperwork:**  Instead of requiring parents to submit full documentation every year, the DOE will only require that paperwork every three years, allowing for income eligibility updates to be made each year, as needed.

- **Expedite Payments:**  DOE will make tuition payments on a monthly basis when required by a program, and it will provide a payment schedule to parents following any settlement.  Once parents win a claim for tuition reimbursement, the DOE will pay the tuition while the DOE appeals that decision to a higher level of review.

; and

Whereas these changes make it even more less than likely that this matter is capable of repetition that may evade review (supra); and

Whereas it is also important to note that there is case law that prohibits the DOE from recouping payments made pursuant to pendency.  (See New York City Dep't of Educ. v. S.S., 2010 WL 983719, at *11 [S.D.N.Y. Mar. 17, 2010]); and

Whereas the DOE's failure to appear at the hearing and its default constitutes a concession of a denial of FAPE and the uncontroverted record supports the Parent's request for relief as detailed below.

**NOW therefore**, it is hereby

**ORDERED upon the DOE's DEFAULT for its FAILURE TO APPEAR and after INQUEST** that the pursuant to the provision of the IDEA regarding "pendency" and its accompany provisions regarding an award of compensatory services for the NYC-DOE's failure to implement "pendency", upon its receipt of reasonably satisfactory proof of services having been rendered, the DOE shall either reimburse the Parent and/or directly pay the cost of the student's tuition and related services at the private school, as well as for the cost of the student's transportation to and from the private school with a 1:1 nurse, for the entirety of the student's 12-month 2019-2020 school year thereat, as well as those same services in the amount indicated, but in no case duplicating those services which would result in "double dipping", additionally as an award of compensatory service on the grounds of equitable considerations for the DOE's failure to appear at the hearing, its default on its statutory obligations under "pendency" and at a "hearing on the merits", thus resulting in its tacit concession of a denial of FAPE for the student's 12-month 2019-202 school year, for any of the services the student missed as a result of the DOE's failure to timely implement "pendency" and on a compensatory and equitable basis to cover the entirety of the student's 12-month 2019-2020 school year, with the cost for these services not exceed the reasonable and fair market rate cost for such services in New York City; and it is further

**ORDERED upon the DOE's DEFAULT for its FAILURE TO APPEAR and after INQUEST** that the DOE shall conduct evaluations of the student in all areas of his suspected disabilities, not evaluated within the last two years, for the 2021-2022 school year; and it is further

**ORDERED upon the DOE's DEFAULT for its FAILURE TO APPEAR and after INQUEST** that the CSE shall forthwith reconvene to produce a new IEP for the student that considers all of the student's available evaluations and any related information and produce a new IEP for the student's 2021-2022 school year; and it is further

**ORDERED upon the DOE's DEFAULT for its FAILURE TO APPEAR and after INQUEST** that in light of the determinations herein, I find that this matter is rendered "moot" and that it is unnecessary to address the merits of the parties' contentions herein and it is further

**ORDERED upon the DOE's DEFAULT for its FAILURE TO APPEAR and after INQUEST** that any of the other relief sought by the Parent not addressed by this "Final Order" is found to be either resolved by the parties, withdrawn by the Parent, outside the scope of the IHO's authority, unsupported by the record, or rendered moot by the "Order on Pendency" rendered herein."

DATED:      December 2, 2020                _____
                New York, New York           Edgar De Leon - IHO

## <u>NOTICE OF RIGHT TO APPEAL</u>

**Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete.  The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education.  A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.  (Rev. 07/09/20)